HENRY L. GOODWIN *vs.* THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

An-injunction should never be granted because of the mere apprehension of the petitioner that a wrong may be done. The court must be satisfied that there is substantial ground for the apprehension, and that the injury will be serious and practically irreparable.

Where a stockholder in a railroad company sought by an injunction to restrain the company from granting free passes to members of the General Assembly and to state officers, and it was not found by the court that the company contemplated doing this, but only that it had given such passes to some former members of the General Assembly and to some former state officers, and that the petitioner was apprehensive that it would grant such passes to members of the General Assembly and state officers then about to be elected, it was held that there was not sufficient ground for interference by injunction.

The giving and accepting of such passes commented on by one of the judges, and, especially in respect to judicial officers, strongly condemned.

BILL for an injunction against the granting of free passes, by the respondents, to members of the General Assembly and other state officers; brought to the Superior Court in Hartford County. Facts found and petition dismissed by the court, (*Beardsley, J.,*) and motion in error by the petitioner. The case is fully stated in the opinion.

*C. H. Owen,* for the plaintiff in error.

*H. C. Robinson,* for the defendants in error.

FOSTER, J. The order and decree of the Superior Court, dismissing this bill, is brought here for revision by a motion in error. The petitioner alleges that he is and for a long time has been, a stockholder in the respondent railroad company; that the object and business of said company is the transportation of passengers and freight for hire; and that the chief income and property of said company is derived from the sale of tickets and passes contracting for such transportation. That for a long time heretofore, to wit, for a period of more than one year prior to the date of the petition, the said company and its officers have wrongfully concealed and hid from the petitioner, and so continue to conceal and hide from him, the names of the stockholders in said company, and the number of shares of stock held and owned by each of them; whereby and by a fraudulent and wrongful combination of a minority of said shareholders with the officers of said company, the elections of said company have been controlled, and its affairs managed in the interest of

said minority, and in the interest of other companies wherein said minority are also shareholders. That for a long time heretofore, to wit, for a period of more than four years prior to the date hereof, the said company have wrongfully, contrary to public policy, and in fraud of the interests of the shareholders of said company, or of a majority of them, contriving so to do by means of the concealment of the names of their shareholders as above written, issued free passes, otherwise known as complimentary tickets, being contracts for transportation without hire or payment, to certain members of the General Assembly of this state and of other states, and to certain other officers and servants of this and other states, and to certain other persons to the petitioner unknown, and have thereby remitted to them, each and several, the proper fares and hire for their transportation, and have transported and conveyed, and to the date of the petition continue to transport and convey said members, officers, and other persons, without hire, whereby the said shareholders and the petitioner are deprived of their profits and property in said company; and the funds and income of said company have been and are squandered and misappropriated, contrary to the object and uses of said company as described by their charter.

Following these allegations as to matters of fact, the petitioner proceeds to allege that he verily believes, and therefore avers, that said company is about to issue in the same manner as above written, certain other free passes and complimentary tickets to certain other members of the General Assembly, officers, and other persons, elected and to be elected, and thereby to further deprive the petitioner and said other shareholders of their income and profits as aforesaid; also to allege that, if damages can be collected and recovered at all for such loss and deprivation, such collection and recovery can be effected and enforced only by numerous and vexatious suits, and that he and said other stockholders have no remedy at law; that he cannot properly defend and sustain this petition without a disclosure of the names and number of shares of said other stockholders, and making said other stockholders parties hereto.

The prayer of the petition is for a disclosure, and for an order that the respondents should truly set forth a schedule of all books and papers relating to the matters charged in the bill, or any of them, and deposit the same, especially any book known as the stock-book of the company, with the clerk of the court to which the petition was made returnable. The petitioner further prayed that the respondents, and all officers, employees or servants of the respondents, their agents and attorneys, be permanently and forever enjoined and commanded not to make or issue hereafter any free pass or complimentary tickets to any member of the General Assembly, or any other officer of this or any other state, elected or to be elected, and that they be in like manner enjoined and commanded not to convey such officers, members, and servants over any part of the line of the respondents' railroad, without requiring from them and each of them payment of the regular fare or commutation rate for each, excepting such officers or other persons as are by the statutes of this state exempted from such payment, and such officers of other corporations, and other persons engaged in the business of transportation, as a proper interchange of courtesy between the respondents and such corporations and other persons may require.

The petition is dated the 1st day of April, 1875, and was returnable to the Superior Court to be held at Hartford on the first Tuesday of July, 1875. The facts alleged in the petition were verified by the oath of the party, and an application for an order for a disclosure, and an injunction to issue forthwith, was at once made to the Superior Court, then in session in Hartford County. On the 9th of April, 1875, that court passed an order on said petition, enjoining and commanding the respondents, and all their officers and agents, not to hide or conceal from the petitioner the books or papers of the respondents, but to have their stock-book, or a true and attested copy of so much of the same as should attest the names of all the stockholders of said company, with the number of shares owned and held by each, in the hands of the clerk of the Superior Court on or before the first

Tuesday of July then next. The respondents were further expressly commanded and enjoined to issue no free passes or complimentary tickets to any member of the General Assembly, or other officer or servant of the state of Connecticut, or of any other state, or of the United States, or of any county, town or municipal corporation therein; and also further commanded and enjoined not to carry or convey any such member, officer, or servant, over any part of the line of railroad owned by the respondents, or hired for the respondents' business, save on requiring from them the regular and usual fare or commutation rate for each, excepting only such officers and other persons as were excepted in said petition.

At the September term of the Superior Court, 1875, the court made the following finding:

"Upon the consideration of this case, after hearing the parties with their witnesses and counsel, the court finds that the petitioner is the owner of ten shares of the capital stock of the New York, New Haven and Hartford Railroad Company; that the purposes of the company and the powers of the directors are set forth in the charter of the company with its various amendments; that the company has issued complimentary tickets to some former members of the General Assembly and to some of the executive and other officers of the state, before and after he became a shareholder in the company; that such tickets were offered to the petitioner when he was a member of the General Assembly, and before he was a stockholder in the road or its predecessors; that he afterwards (after said offer to him,) purchased the ten shares of stock in the railroad, which were represented by ten shares of the New York, New Haven and Hartford Railroad Company; that the petitioner was apprehensive from the previous course of the company's business and from the position taken by some of the officers at the last meeting of the shareholders of the company, that the present officers would issue complimentary tickets to members of the General Assembly to be elected after the date of his petition; and that all and singular the other averments of said petition are untrue."

Thus it appears that, of the various averments in the petitioner's bill, some of which were certainly of a grave character, these only are found true; that the petitioner is a shareholder in said company; that the purposes of the company and the powers of the directors are set forth in their charter with its various amendments; that the company has issued complimentary tickets to some former members of the General Assembly, and to some of the executive and other officers of the state; and that the petitioner was apprehensive that the present officers would issue complimentary tickets to members of the General Assembly to be elected after the date of his petition.

To all those who are well informed as to the proper functions and prerogatives of this court, it is quite superfluous to remark that on the motion before us we are called on to decide whether, on the facts as found of record, there is or is not error in law in the judgment and decree of the Superior Court. That and that only is to be decided.

Some parties may possibly come here with the mistaken notion that we re-investigate the facts involved in cases, and that if those facts are erroneously found we revise and correct such finding. Our powers and duties lie within much narrower limits. Of the averments in the petition found true, that the petitioner is a stockholder in the company; that the purposes of the company and the powers of the directors are set forth in the charter of the company and its amendments; that the company had issued complimentary tickets to some former members of the General Assembly, and to some of the executive and other officers of the state, cannot, we think, afford grounds for the intervention of the court in the manner prayed for. Whatever may be thought of the policy or propriety of issuing complimentary tickets to members of the General Assembly, or to other officers of the state, however reprehensible such acts may be considered, it certainly ought to be shown that the practice was still in existence, or that the company proposed to adopt it in future, before the court should be called on to interpose by injunction. The finding thus far alludes to the practice only as a matter of the past.

The only remaining clause in the finding which has a bearing on the question in hand, and on which any claim can be made for a judgment in favor of the petitioner, is this, that the petitioner was apprehensive, from the previous course of the company's business, and from the position taken by some of the officers at the last meeting of the stockholders of the company, that the present officers would issue complimentary tickets to members of the General Assembly to be elected after the date of his petition.

No court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it. Those fears or apprehensions may exist without any substantial reason. Indeed they may be absolutely groundless. Restraining the action of an individual or a corporation by injunction is an extraordinary power, always to be exercised with caution, never without the most satisfactory reasons. Not the applicant only, but the court, must be satisfied that a wrong is about to be done, or an injury is about to be sustained, which, practically, will be irreparable, before resort should be had to this extreme power.

This record shows no such state of things. Certain reasons indeed are given why the petitioner entertained apprehensions as to the course which these respondents in the future might pursue, but the record is silent as to whether those apprehensions were well- or ill-founded. There is no finding by the court that the respondents contemplated doing, or purposed doing, any act which the petitioner sought to restrain them from doing, and so the case stands merely on the apprehensions of the petitioner; quite too narrow a basis to support an injunction.

The question arising on the record is thus disposed of, and we might leave the case here. But lest it should seem that we regard with indifference the effort of the petitioner to put a stop to the practice, which the facts of the case show to be a not uncommon one, of giving free passes or tickets by railroad companies, as a gratuity, to the public officers of the state, a few words on that subject may not be impertinent. As the views about to be expressed are not essential to the

result at which the court has unanimously arrived, it may be due to some of my brethren to say that, while they regard the subject essentially as I do, they have some doubts as to the propriety, where it is not clearly demanded of us, of laying down what may seem to be a rule of action in such a matter for other departments of the government. I take therefore the personal responsibility of all which is now added, feeling sure that, whatever sense of delicacy would keep any of my brethren silent on the subject, we all agree as to the moral question involved.

The practice referred to may be viewed in two aspects: first, its effect on the railroad companies; next, on those who receive the tickets, and through them on the community.

It may be safely assumed, generally, that the directors and managing agents of these corporations have the interest of those corporations primarily in view. Good dividends being the supreme object, they will probably issue no more of these tickets than are likely to redound to that end. A full equivalent, in some form, will doubtless be looked for in each case, and if not realized, it may be presumed that the issuing of such tickets will be discontinued. Should the issue at any time be extended beyond profitable limits, the stockholders must have abundant power in their own hands to correct the evil by a change of agents.

Among the obvious effects of receiving these tickets, by persons in official positions, is the public scandal which it creates. That may not be a sufficient cause for abolishing the practice, but it is an evil of such magnitude that right-minded men should be willing to make some sacrifice to prevent it. The members of the executive and legislative branches of the government are no doubt fully competent to decide for themselves as to the propriety of accepting these tickets. It would be an assumption of superiority most unbecoming in us, were we thus, prematurely and gratuitously, to volunteer an opinion. For judicial officers, however, I feel free to say, that I condemn the practice, wholly and entirely. Not because we should any of us be conscious that our judgment would be warped or influenced by so slight a

cause.   We flatter ourselves that it would not be.   Still, it would provoke comment, if not condemnation, from suitors against whom judgments might be rendered where the interest of these corporations was concerned.   The charge, or the suspicion, of bias is to be avoided.   *Dimes* v. *Grand Junction Canal*, 3 H. L. cases, 793.   The administration of justice should not only be pure, but, as far as possible, free from suspicion.   To attain the high ends of his office, a judge must be of good report.   That a gift perverteth the ways of judgment, is a truth coming to us with so lofty a sanction that it may not be questioned.   Lord Chief Justice Hale, whom Lord Campbell justly describes as an object of admiration and love to all his contemporaries, and as a model of public and private virtue by succeeding generations, refused to try the cause of a party who had sent him a present of some venison, until his butler had ascertained and paid its full value.   The payment being refused, the cause was postponed.   This, by some, was thought to be over scrupulous, and possibly it may have been so; but for myself, I prefer, on this subject, to err with Lord Hale, rather than to follow Lord Bacon.

There is no error in the judgment below.

In this opinion the other judges concurred.