THEODORE L. SMITH *vs.* JOHN KING.

New Haven & Fairfield Cos., Jan. T., 1892. ANDREWS, C. J., CARPEN-
TER, SEYMOUR, TORRANCE and FENN, Js.

As a general rule an injunction will not be granted to prevent a threatened trespass; but where there is something particular in the case, so as to bring the injury under the head of quieting possession, or so as to make out a case of irreparable mischief, or where the value of the inheritance is put in jeopardy, an injunction may be granted.

The strictness of this rule has been considerably relaxed in various jurisdictions, but our own courts have always adhered pretty rigorously to it.

A small stream of water flowed through the plaintiff's land and thence through the defendant's land next below. The defendant repaired a long abandoned dam on his land, and made a mill-pond, into which ran two other streams below the plaintiff's land. The dam would have set the water back upon the plaintiff's land but for a waste-way eight feet long, constructed in it, the bottom of which was sixteen inches lower than the top of the dam. Upon this waste-way the defendant placed flash-boards, by means of which the level of the pond was so raised as to flow the plaintiff's land, upon which he had young forest

trees of value growing. After the plaintiff had brought suit the defendant removed the flash-boards and there was no evidence that he intended to replace them. When they were removed the bottom of the overflow was seven inches below the level of the plaintiff's land, and the water was set back upon it only at times of sudden and severe rains or sudden melting of snow. The effect of repeated overflowing would be, however, to kill the growing trees and render the land less valuable. Held not to be a case in which an injunction ought to be granted.

[Argued January 19th—decided February 29th, 1892.]

SUIT for an injunction against the flooding of the plaintiff's land by setting back the water of a stream upon it; brought to the Court of Common Pleas of New Haven County. The case was heard before *Deming, J.*, who made the following finding of facts.

For a number of years the plaintiff has been and now is the owner of a tract of wood-land containing several acres, situated in the town of Seymour, and covered with a growth of young trees consisting of elm, ash, maple, chestnut, alder and other varieties. The defendant owns a tract of land adjoining, which he purchased in 1880. A small stream of water flows through these lands and has flowed in the same channel from time immemorial; and two other streams of water flow into the pond to be mentioned, through other and higher land, one of which is much larger than the stream through the plaintiff's land.

About sixty years ago a dam was constructed on the defendant's land, causing the water to set back and forming a pond, which supplied power to a saw-mill located near the dam. This dam was built by one Bassett, who then owned the land now owned by the defendant. The pond is located in a ravine surrounded by hills, and the land of the plaintiff is but a little higher than the land covered by the water of the pond.

The mill, dam and pond were used for about twenty years, and were then entirely abandoned for about thirty years; the mill went to decay, and the dam was partly washed away. During that time the stream of water ran through the lands

of the plaintiff and defendant and through the break in the dam without obstruction.

In 1880 the defendant purchased the land which had formerly been covered by the pond, but which at that time had grown up to brush and small trees, or had become turfed over and been used for a meadow, including the old dam, and shortly thereafter made some slight repairs on the dam, by means of which he caused the water to set back and form a small and shallow pond, which he used in connection with a small pond near his house to furnish water for a mill which he owned and operated, and which was located further down the mountain near his house, and a considerable distance from the site of the old mill.

The water from the old pond had never been used for power for the defendant's mill prior to 1880, and the plaintiff did not know that the defendant had made any repairs on the old dam, or that he was using the water from the old pond for power at his mill, or that there was any water in the old pond, until the fall of 1890. He was entirely ignorant of the intention of the defendant to rebuild the old dam and did not know it had been rebuilt until his land was flooded and until a few days before the commencement of this suit.

In the fall of 1890 the defendant repaired the break in the dam in a thorough and substantial manner, leaving an opening, called an overflow, for the discharge of surplus water, about eight feet wide, and about sixteen inches lower than the level of the top of the dam. This overflow is the only outlet for the water in the pond, unless it rises high enough to flow over the entire top of the dam. There had been an overflow in the old dam constructed sixty years before, at the same place where the new overflow was made by the defendant, but I am unable to determine whether or not the new overflow is of just the same height and width as the overflow in the old dam.

The defendant used the dam and pond to a very limited degree for the nine years after first repairing the dam, and prior to rebuilding it in a substantial manner in the fall of

1890. After he had completed rebuilding it in 1890, he placed certain boards about twelve inches high, called flashboards, in and across the overflow, for the purpose of still further raising and deepening the water in the pond. By reason of the obstruction of the water by the dam and flashboards the area of the pond was largely increased and the water was caused to set back and overflow the land of the plaintiff to a depth of several inches. This water formed into ice, and remained upon the land a long time after the water subsided, and long after this suit had been commenced.

Since the commencement of the suit the defendant has removed the flash-boards from the overflow, and the water was thereafter drained from the plaintiff's land, leaving a covering of ice; but I find that once, at least, since the flash-boards were removed, the land of the plaintiff has been flooded by water setting back from the dam.

The surface of the plaintiff's land is seven inches higher than the bottom of the overflow at the dam. When the water is more than seven inches deep in the overflow the land of the plaintiff will be covered, and every inch in the overflow above seven will cover the plaintiff's land with an added inch of water.

So long as the overflow is continued at its present dimensions sudden and severe rains in the spring or fall, or sudden melting of snow, will cause the pond to fill and the water to set back and cover the land of the plaintiff. The water of the pond had never set back so as to flood the land of the plaintiff until after the defendant made his repairs in the fall of 1890. The plaintiff has not been negligent in asserting his rights or in attempting to protect his property.

The plaintiff has sold a number of trees each year from the land in question, to be removed and re-set as shade and ornamental trees in the village of Ansonia, and has received a considerable sum of money for such trees.

I am unable to determine the amount of damage the plaintiff has suffered by reason of the overflowing of his land by the defendant, or the amount of damage he will suffer by the continued and repeated overflowing of his land; but

the effect of repeated overflowing will be to destroy the growing trees, and render the land less valuable. The defendant can easily avoid all danger of further injury by enlarging the width of the overflow of the dam, so that in case of sudden rains or melting of accumulated snow the water may be quickly discharged and a set-back upon the land of the plaintiff prevented.

Upon these facts I find that the plaintiff is entitled to an injunction restraining the defendant from causing or permitting the water to be set back by his dam upon and overflowing the land of the plaintiff; from placing or causing or permitting flash-boards or other devices to be placed in the overflow of the dam; and from so maintaining his dam as to cause the land of the plaintiff to be overflowed thereby.

*V. Munger*, for the appellant, cited—1 High on Injunctions, §§ 1, 22, 23, 34; Wood on Nuisances, §§ 796, 797; Gould on Waters, §§ 510, 521, 523; 10 Am. & Eng. Encycl. of Law, 782, note 5, 784; Pomeroy on Remedies, § 68; *Johnson* v. *Lewis*, 13 Conn., 307; *Bigelow* v. *Hartford Bridge Co.*, 14 id., 579; *Hine* v. *Stephens*, 33 id., 505; *Goodwin* v. *N. York, N. Haven & Hartford R. R. Co.*, 43 id., 500; *Hawley* v. *Beardsley*, 47 id., 572; *Coe* v. *Winnepisiogee Mfg. Co.*, 37 N. Hamp., 254; *De Witt* v. *Hayes*, 2 Cal., 463.

*W. S. Downs*, for the appellee, cited—1 High on Injunctions, §§ 2, 7, 701, 708, 746, 768, 804, 839; Kerr on Injunctions, §§ 15, 44, 49, 57, 164, 261; Ward on Nuisances, §§ 778 and note, 779, 780, 781, 783, 789; 10 Am. & Eng. Encycl. of Law, 789, 855 and notes; *Branch* v. *Doane*, 17 Conn., 417; *Sellick* v. *Hall*, 47 id., 260; *Bassett* v. *Salisbury Mfg. Co.*, 47 N. Hamp., 426.

ANDREWS, C. J.   As a general rule an injunction will not be granted to prevent a threatened trespass.   But where there is something particular in the case, so as to bring the injury under the head of quieting possession, or so as to make out a case of irreparable mischief, or where the value

of the inheritance is put in jeopardy, an injunction may be awarded. The rule, with its exceptions and the reasons therefor, is very clearly stated by Chancellor KENT in *Stevens* v. *Beekman*, 1 Johns. Ch., 318; *Livingston* v. *Livingston*, 6 id., 497; *Jerome* v. *Ross*, 7 id., 315. See also Story's Eq. Jur., § 928.

The strictness of the rule so laid down has been considerably relaxed in various jurisdictions. *Goodrow* v. *Richardson*, L. R., 9 Cha. App., 221; *Winter* v. *Easum*, 2 De G., J. & S., 272; *Allen* v. *Martin*, L. R., 20 Eq. Cases, 462; *Baron* v. *Korn*, 127 N. York, 224; *Wilcox* v. *Wheeler*, 47 N. Hamp., 488.

This court however has always adhered pretty rigorously to the rule as given by Chancellor KENT in the cases above cited. *Goodwin* v. *N. York, N. Haven & Hartford R. R. Co.*, 43 Conn., 494; *Hawley* v. *Beardsley*, 47 id., 571. In the latter case the court said, quoting from *Enfield Toll Bridge Co.* v. *Conn. River Co.*, 7 Conn., 50,—" An injunction is not *ex debito justiciæ* for any injury threatened or done to the estate or right of a person, but the granting of it must always rest in sound discretion governed by the nature of the case." And quoting also from *Whittlesey* v. *Hartford, Providence & Fishkill R. R. Co.*, 23 Conn., 44,—" Writs of injunction are not to be granted for every trifling cause or made substitutes for every action of trespass or ejectment. * * * They ought not to be issued except for the prevention of great and irreparable mischief, and in the language of our present statute, in cases only in which adequate relief cannot be had in the ordinary course of law."

Assuming that the condition of things, as it existed at the time this action was brought, was such as to justify the court in overruling the demurrer to the complaint, does the case as shown by the finding of facts come within the rule respecting injunctions as it has been given by our own cases? The defendant had removed the flash-boards from his dam before the cause was tried. There is no allegation nor any finding, there is not even a suggestion, that he intends to replace them. Indeed the fact that he removed them voluntarily would indicate that he does not intend to infringe

any right of the plaintiff. As the defendant's dam now
exists the water in the pond must be raised more than seven
inches before it will set back at all upon the plaintiff's land.
In the ordinary flow of the stream there will be no flooding
of the plaintiff's land; but the court finds that "sudden and
severe rains in the spring and fall, or sudden melting of snow,
will cause the pond to fill and the water to set back and
cover the land of the plaintiff." This is the full extent of
the injury to which the plaintiff is now exposed. It amounts
to this,—that by reason of a structure which the defendant
has placed upon his own land the accumulated water from
sudden and severe rains in the spring and fall, or from the
sudden melting of snow, will flow off from the plaintiff's
land less quickly than it otherwise would. It is somewhat
doubtful whether this is an injury for which the defendant
can be made liable to the plaintiff. In Gould on Waters,
§ 267, the law is stated thus :—" The right of an owner of
land to occupy and improve it in such manner and for such
purpose as he may see fit, either by changing the surface or
the erection of buildings or other structures thereon, is not
restricted or modified by the fact that his own land is so
situated with reference to that of adjoining owners that an
alteration in the mode of its improvement or occupation in
any portion of it will cause water which may accumulate
thereon by rain or snow falling on its surface or flowing up-
on it over the surface of adjacent lots, either to stand in
unusual quantities on other adjacent lands, or pass upon and
over the same in greater quantities or in other directions
than they were accustomed to flow." The law as so stated
was fully approved by this court in the very recent case of
*Chadeayne* v. *Robinson,* 55 Conn., 345. See also *Grant* v.
*Allen,* 41 Conn., 156.

It may be argued that the present case does not fall within
the law as so stated for the reason that in this case there is a
stream of water which is swollen by the rain and melting
snow, and so caused to flow upon the land of the plaintiff.
The argument would be a difficult one to maintain because
it is the rain and snow which falls upon the plaintiff's own

land that (in part at least) causes the overflow of the stream. But granting the argument to its fullest extent, still there is no case of irreparable injury shown. On the subject of damages the court below says:—" I am unable to determine the amount of damage the plaintiff has suffered by reason of the overflowing of his land by the defendant, or the amount of damage he will suffer by the continued and repeated overflowing of his land; but the effect of repeated overflowing will be to destroy and kill the growing trees and render the plaintiff's land less valuable." It is very likely true that the effect of repeated overflowings, especially if they were continuous, would be to destroy trees and to make the land less valuable. But it does not follow that occasional overflowings caused by sudden and severe rains in the spring and fall or by the sudden melting of snow, and which must be of brief duration, would produce any such effect. There is no such finding, and in the absence of a finding we cannot presume it. On the contrary, as a matter of common knowledge, we might almost assume that such occasional overflowings would do no damage to the trees or to the land. There is no irreparable injury found, nor is there any such liability to repeated actions in trespass shown as makes this a case of irreparable mischief.

There is error and the judgment is reversed.

In this opinion the other judges concurred.