MORGAN B. BRAINARD ET AL. *v.* TOWN OF
WEST HARTFORD

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 92074

Memorandum filed March 17, 1953.

*Robinson, Robinson & Cole,* of Hartford, for the Plaintiffs.

*Albert S. Bill* and *Harrison D. Schofield,* both of Hartford, for the Defendant.

ALCORN, J. The plaintiffs seek to enjoin the defendant's use of a tract of land for a public dump. The defendant's answer admits that it owns about 30.6 acres of land on Talcott Mountain with a frontage of about 200 feet on Albany Avenue in West Hartford which it purchased for use as a town dump "sometime in the distant future." It denies, however,

that it is threatening and proposing to use the land for that purpose "in the present or near future." There is, however, no contemplated use for the property except as a town dump. The town owns no other land available for the purpose.

At the trial the defendant made no effort to controvert the plaintiffs' claims that their land is zoned and suitable for the highest type of residential use, and that a public dump is an undesirable neighbor in a residential area.

The defense interposed is that the plaintiffs' action is premature and that they will have an adequate legal remedy when a cause of action does mature. It is argued that the use of the land for a dump is contingent upon town officials failing to find another solution before the present dump is filled; upon a continuation of the present official sentiment to use this area to replace the present dump; and upon the outcome of an application to, and a possible appeal from, the zoning authorities for permission to use the land for a dump.

The evidence discloses that at a meeting of the defendant's town council held on August 28, 1951, a recommendation was received from the town board of finance that $20,815 be appropriated to purchase the land in issue for "a future refuse disposal area." The council voted such an appropriation at that meeting after hearing an explanation by the town manager "that the Town now has one dumping area, near Oakwood Avenue, east of the railroad track, which is rapidly being filled up, and in the logical course of events if no other dumping ground is available it would mean that the Town would have to incinerate its refuse at a cost much higher than by the use of the present method. He therefore felt it advisable to have an area which could be used for this purpose in reserve." With the funds thus appropriated the town purchased the land.

The present dump near Oakwood Avenue is in an industrial zone, the least restricted of any of the town's zone areas. "The present method" of refuse disposal in that area as referred to by the town manager is by dumping and burning refuse in the open. An open dump of this nature is a breeding place for rodents, vermin, and insects, and gives off offensive smells and windblown litter. It is very difficult to keep free of garbage. Under "the present method" the dump burns every day and produces annoying smoke, the odor of burning rags and paper, and flying sparks. In the years from 1948 through 1952 the fire department responded to calls to control dump fires from twenty-eight to thirty-five times a year. Residents in the area are plagued by rats, and insects interfere with their enjoyment of open yards in summer.

Property owners as much as a mile distant from a dump of this sort are annoyed by rats. The presence of such dump blights the area near it and adversely affects real estate values for residence purposes within a radius of half a mile.

The plaintiffs together own some 279 to 379 acres of land located on three sides of defendant's property. The proposed dump would occupy an abandoned stone quarry about 60 feet deep on defendant's property. The quarry surface is rock and rubble with no ground cover and is unsuitable for building purposes. The quarry abuts the southeast corner of one parcel of the plaintiff Gibbons' land, and is within three feet of other Gibbons land and land belonging to the plaintiff Sachs. It is approximately 1000 feet from property of the plaintiffs Hart and DeNezzo and from a part of the land of the plaintiffs Brainard.

All of the area owned by the plaintiffs and the defendant is in an AAA residence zone, the highest of seven types of residence zone, limiting the use of

the land to one-family dwellings on lots of 18,000 or more square feet. The proposed dump is prohibited by present zoning restrictions.

The area is one of the most desirable residential spots in Hartford County, and in the state. Its elevation commands a view for many miles over the Connecticut valley. It lies in the path of the present residential growth in West Hartford. It is particularly desirable for expensive homes located on three- to six-acre parcels of land. For that type of development a substantial part of plaintiffs' land is reasonably worth $1000 to $1200 per acre if free of the threat of the dump, and there is a market for it. Beyond the area, but within a mile or a mile and a half radius of the proposed dump, are many established homes.

The area is extensively wooded and an open dump in the proposed location would create a serious forest fire hazard to the entire side of the mountain. Prospective purchasers of the type which the area would attract would avoid living in the vicinity of the dump. The defendant's announced object in purchasing its property has already affected the market value of plaintiffs' property. As a result of the officially declared plan to use the property for a dump when the present one is filled, the land of the plaintiffs located within a radius of 1000 feet has a present market value of only $500 per acre rather than $1000 to $1200 if the dump could be disregarded. The northerly parcel of the plaintiff Gibbons' property could not be sold at all for residence purposes.

The defendant advances the well-established proposition that equity will not "grant an injunction merely because of the fears or apprehensions of the party applying for it." *Goodwin* v. *New York, N. H. & H. R. Co.*, 43 Conn. 494, 500. Cases cited by the defendant from other jurisdictions in support of this

proposition are readily distinguishable from the present case in that they involved no existing injury. The defendant attempts an analogy by arguing that, having acquired the land for dump purposes, it may yet change its official mind and hence no harm is done. This overlooks the realities.

The defendant has invested over $20,000 in this land expressly for a public dump, it has definite knowledge that it will need a new dump site within three to five years, and it has provided no other. The only reasonable conclusion is that the defendant definitely intends to try to use this land for a public dump.

The plaintiffs, on the other hand, have land which is of no use to them except for residence purposes. A purchaser from them would acquire with his land, at best, the inconvenience and expense of litigation to exclude the dump, or, at the worst, the presence of the dump as a neighborhood nuisance. The very real, present injury to the plaintiffs from that state of facts is obvious. No purchaser of property wishes to acquire with it either a lawsuit or a nuisance.

Injunctions are necessarily prospective in operation. *Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 419; *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.,* 128 Conn. 596, 605. They are not issued as of right, but in the sound discretion of the court. *Gerald Park Improvement Assn.* v. *Bini,* 138 Conn. 232, 236. An injunction will lie to prevent threatened injury to property even against a municipality in the exercise of its governmental functions. *Danbury & N. R. Co.* v. *Norwalk,* 37 Conn. 109. The question as to whether or not damage is irreparable depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered. *Burroughs Wellcome & Co.* v. *Johnson Wholesale Per-*

*fume Co.,* supra, 604; *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.,* 120 Conn. 168, 177. The plaintiffs' injury in this case comes, at present, not from any actual dump operation, but from a definite and well-established threat to commence such operation. The circumstance that the defendant has not actually started dumping operations is no obstacle to the issuance of an injunction. *Wetherell* v. *Newington,* 54 Conn. 67. The fact that the threat may hang like an evil cloud for several years serves to enhance rather than minimize the existing injury. It does not lighten the blight cast upon the property for the defendant to keep the plaintiffs in suspense as to the time when they will be called upon to contest the actual attempt to use the dump.

The defendant argues that the plaintiffs should be required to wait under this threat until it decides to apply for a zone variation to use the dump. This, it is said, will give the plaintiffs a full legal remedy to raise every issue now presented. It is an established doctrine of equity that an injunction should not issue except to prevent irreparable injury and when adequate remedy cannot be obtained at law. *Smith* v. *King,* 61 Conn. 511, 516; *Gorham* v. *New Haven,* 82 Conn. 153, 156; *Kelly* v. *Waterbury,* 82 Conn. 255, 257. The short answer to the defendant's contention as applied to the present case is that the suggested future proceedings would not afford the plaintiffs full and adequate relief. Even if the plaintiffs were successful three or five years hence in preventing the use of this land for a dump, that result could neither undo nor compensate for harm they are now suffering and would have suffered until that time. It is to the best interest of both parties that the issue be met at this time. The plaintiffs are entitled to have the burden of the threat lifted from their land. The defendant benefits from having its projected

program scrutinized while there is still time to seek another solution before its dumping problem reaches the critical stage. *Vicksburg Waterworks Co.* v. *Vicksburg,* 185 U.S. 65, 82. No embarrassment to the defendant's governmental operations will result from the issuance of an injunction at this time. If the question were allowed to wait until the present dump is filled and no other space were available, a different picture might be presented.

An injunction may issue restraining the defendant, its officers and agents, under penalty of $5000, from using its aforesaid land or any part thereof as a dump or depository for trash, litter, ashes, refuse, junk, or waste materials of any sort.