The Connecticut Bank and Trust Company et al.
*v.* Edward Mularcik et al.

Superior Court      Litchfield County      File No. 16572

Memorandum filed July 18, 1961

*Paul L. Cornell, Jr.,* of Washington Depot, for the plaintiffs.

*Goldstein & Peck,* of Bridgeport, for the defendants.

MacDonald, J. Plaintiffs, Gerald H. Davis, as life tenant, and the Connecticut Bank and Trust Company, as owner of the remainder interest, of and to an attractive residential property in the lovely old town of Woodbury, seek to enjoin the defendants, as owners of a sand and gravel bank on adjoining property, from carrying out their announced plan of operating, in connection with the existing commercial use of their property, a rock crusher and stone screener. Although the locality is admitted by defendants to be "heavily residen-

tial," there are several commercial establishments in the immediate vicinity of plaintiffs' property, which is located on heavily traveled United States route 6, including, in addition to the Curtiss House, an attractive New England inn that does not alter the general nature of the neighborhood, a gasoline station almost directly across the road from the properties involved, several small factories or similar business buildings located within 1000 and 1400 feet of defendants' property, and, of course, defendants' property—next door to plaintiffs' residence—which has been used as a sand and gravel bank for over a year. There also are a quarry, where blasting is conducted, and a sand and gravel operation, involving a large stone crusher, about a mile away.

It is unfortunate for those who wish to preserve the residential quiet and beauty that until comparatively recent times has characterized the town of Woodbury that they did not obtain, before it was too late, the status preservative of an appropriate zoning ordinance, for the only basis upon which further industrial or commercial intrusions can be enjoined is upon that of nuisance, more specifically, in this instance, a "private nuisance," which has been defined as "an unreasonable interference with [an] . . . interest in the use and enjoyment of land"; Prosser, Torts (2d Ed.) § 72; and which may be either a "negligent nuisance," which arises from conduct merely negligent, or an "absolute nuisance," which involves strict liability, or liability arising without negligence. See *Beckwith* v. *Stratford*, 129 Conn. 506, 510; *DeLahunta* v. *Waterbury*, 134 Conn. 630, 634. It is the position of plaintiffs in the instant case that the establishment of a rock crushing and stone screening facility on defendants' premises would constitute, per se, an absolute nuisance regardless of the manner in which it is operated

and assuming the use of every care and precaution by defendants. As stated in plaintiffs' brief, their claim for injunctive relief is based not primarily "upon the amount of noise which may or may not ensue from defendants' proposed installation," but rather upon the proposition that it is simply "defendants' proposed use of their land in this residential area, which is wholly improper because of its unreasonableness in view of all the circumstances, that entitles plaintiffs to the relief sought."

In support of this position, plaintiffs rely heavily on the case of *Jack* v. *Torrant,* 136 Conn. 414, involving the granting of an injunction against the operation of a funeral home on North Street in Litchfield—widely known as one of the most beautiful residential streets in the United States—pointing out that the decisive issue there was not the way in which the business was operated, which apparently was proper, but merely "its location under the existing circumstances." However, one of the concluding paragraphs in the opinion, at pages 428-429, points out some very important distinctions between that case and the present situation: "In sustaining the court's judgment granting this injunction, we would emphasize that our decision is predicated upon the correctness of the court's conclusion upon the particular facts found. Had the defendants established and maintained this funeral home for a substantial period without objection, a very different question might be involved in determining whether the plaintiffs could obtain injunctive relief." In the *Torrant* case, the court found that the funeral home already had operated for about eight months on North Street and that such operation, although conducted properly, actually brought about adverse effects upon the inhabitants of the neighborhood—the use of the basement as a morgue, the transportation of human bodies

over the defendant's driveway, the delivery of coffins, the parking of long lines of mourners' cars in front of plaintiffs' homes, the sight of embalmed bodies laid out in the first-floor rooms were found, through the testimony of plaintiffs, to have had an "immediate and continuing depressing effect upon them which substantially decreased their quiet and peaceful enjoyment" of their homes.

Here, defendants have been using their property for the commercial purposes of a sand and gravel bank for over a year and no claim is made that such use has been a nuisance, nor is any attempt made here to enjoin such use. In other words, no claim is or could be made here that the proposed use of defendants' property sought to be enjoined is inappropriate as the first commercial intrusion into the immediate neighborhood, as in the *Torrant* case. Rather, the claim for relief boils down to the proposition that the use of a stone crusher and screener might make noise which might disturb the neighborhood and that this very possibility is affecting the value of real estate in the vicinity.

Since the machine in question has not yet been operated on defendants' property, there was not and, of course, could not have been, any evidence as to the noise it makes, but neither was any evidence offered by plaintiffs as to the noise made by similar machines similarly situated. The plaintiff Davis mentioned that he could hear a stone crusher located over a mile from his home, but the only evidence as to a comparison with the defendants' machine was the statement that the former was very much larger than the latter. The experts Masick and Winnie, introduced by defendants, testified that the advanced scientific construction of defendants' machine made it so silent that the operation could not be heard beyond the boundaries of defendants' land, and although their testimony obviously

was biased because of their pride as designers, owners or salesmen of this particular machine, it was not contradicted or rebutted by plaintiffs.

Whether or not noise, in itself, constitutes a nuisance is a question of fact dependent on the nature and character of the noise, its constancy or frequency, and the extent of the inconvenience caused by it. *Stowe* v. *Miles,* 39 Conn. 426, 428. Here, there has been absolutely no evidence as to what, if any, noise will be created or whether it will be heard on plaintiffs' property in such a way as to cause harm. Plaintiffs merely allege that they will be "necessarily" subjected to unreasonable noise, without alleging, let alone proving, any facts to indicate that they would be disturbed.

The court, at the request of the parties, visited the scene and examined the properties, the surrounding neighborhood, and the location of the machine itself. On the basis of the impressions thereby obtained, as well as upon the evidence, the court cannot possibly find that the operation of the machine in its location as of June 28, 1961, or, even more especially, in the location proposed by defendants at the hearing, at a point some 100 feet further and over a ridge from plaintiffs' property, with operation only during the day, as represented at the hearing, would constitute a nuisance.

It is true, as claimed by plaintiffs, that when a threat of substantial future injury is inherent in a present condition of adjoining land it may constitute a present nuisance which should be enjoined. See *Danbury & Norwalk R. Co.* v. *Norwalk,* 37 Conn. 109; *Wetherell* v. *Newington,* 54 Conn. 67; *Brainard* v. *West Hartford,* 18 Conn. Sup. 218, 223. But, on the other hand, " '[i]t is obviously not fit that the power of [the] court should be invoked for every . . . speculative violation of one's rights.' "

*Taylor* v. *Cooke,* 113 Conn. 162, 166. In *Brainard* v. *West Hartford,* supra, cited by plaintiffs as being quite similar to the present situation, the threatened use of the land adjoining that of plaintiff was a public dump, which obviously presents a threat of nuisance of which a court could, for all practical purposes, take judicial notice. Such elements are not present and have not been shown to be imminent or even likely in this case.

Despite the sympathy which the court has for the desire of plaintiffs to preserve the peace and quiet of the residential countryside, it cannot afford them, by injunction, the relief and protection provided by well-enforced zoning regulations. The plaintiffs have failed to make out a case of actionable nuisance or even imminent threat of actionable nuisance, and their application for a temporary injunction, accordingly, is denied.