[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
Robert Gerak of Monroe, Connecticut brings this application for a preliminary injunction against John Hicks of Naugatuck, Connecticut and Kicks of Waterbury, Inc., a Connecticut corporation, which operates by franchise a TCBY Yogurt store in Waterbury. Gerak owns 50% of the corporate stock and Hicks' wife, Marion, owns the remaining shares.
This injunction is sought ancillary to a verified complaint in five counts. The gravamen of the lawsuit is that Hicks has received corporate monies illegally both as an employee and as an allegedly failed promoter of the Waterbury business.[1] Count one is brought as a shareholder derivative action under section52-572j of our statutes; count two suggests that Hicks' actions are jeopardizing the value of the corporate stock and the corporation's being able to retain its TCBY franchise and requests permanent injunctive relief; count three alleges that Hicks has breached his fiduciary duty as a corporate officer and seeks damages; count four claims treble damages pursuant to section52-64 of our statutes; and count five alleges that Hicks, as a corporate director, violated his duties set forth in section33-313 of the statutes.
Gerak, in his application, asks us to enjoin Hicks "from removing funds from the income proceeds generated by Kicks of Waterbury, Inc.'s business and diverting such monies for his own personal use." Motion for Preliminary Injunction, dated January 8, 1991. Post hearing, Gerak submitted at our request a proposed "Order for Preliminary Injunction" in which he also asks us to order John Hicks to "surrender all checks, pass books, or other means of accessing the bank accounts of Kicks of Waterbury, Inc. to the plaintiff." — We decline the request for temporary injunctive relief.
II. CT Page 3110
During the evidentiary hearings of February 4 and February 18, 1991 on this application, Gerak complained that Hicks was mismanaging the Waterbury store; not promoting properly the TCBY product; and not entitled to any monies which Hicks had been taking, all to the detriment of the business. To bolster this contention, he presented the testimony of the corporate accountant, Michael Mezzaphelle, CPA, who testified that from July 1989 to November of 1990 John Hicks received a total of $22,212.72 from the Waterbury business. Plaintiff's Exhibit 1. This CPA indicated that he was of the opinion that in the wake of the corporation's revenues, Hicks' income was excessive. On the other hand, Hicks testified that he received these monies pursuant to a management agreement or as an employee and further had not received any compensation from the Waterbury store since November of 1990. We think the pros and cons of these claims by the parties can be adequately resolved at law in a trial for money damages.
The parties all brought to our attention that at a recent board of directors meeting, Hicks was removed as the corporate president, but he is contesting the validity of this removal. Although the court was brought by the evidentiary hearings into the inner workings of this corporation, none of the corporate records were introduced and thus on the present record, we are unable to evaluate the apparent corporate impass. Additionally, concerning these records, Marion Hicks indicated that she serves as a temporary corporate bookkeeper and is in possession of the Waterbury Corporation's records.
Robert Stewart, a TCBY field representative, testified during the injunction hearing and we learned in part from him that the current economic recession has had a significant impact on TCBY's sales. He did not testify that the corporation's franchise with TCBY was in jeopardy.[2]
 III.
Upon conclusion of the evidentiary hearing, we are not convinced that the corporation is suffering such irreparable harm to warrant the extraordinary relief of a temporary injunction. Additionally, we are not able to conclude on this record that the plaintiff will probably prevail upon the permanent injunction hearing.
We think that there are adequate remedies at law available to Gerak with his already existing claims for damages and his further legal right, if a management deadlock occurs, to petition under sections 33-382 and 33-383 of our statutes for a windup of a corporation and appointment of a court receiver. In any case, we decline, given the nature of the present claims by the plaintiff, CT Page 3111 to enter the yogurt management business. There are adequate legal remedies available to the parties, particularly the appointment of a corporate receiver as discussed in Massoth v. Central Bus,104 Conn. 683, 687 (1926), which both Gerak and Hicks cite approvingly to us.
Thus, in these circumstances, we decline to issue any preliminary injunctive relief and thus deny the application. Nicholson v. Connecticut Half-Way House, Inc., 153 Conn. 507, 511
(1966); Brainard v. West Hartford, 140 Conn. 631, 634-35 (1954); Goodwin v. New York, New Haven Hartford R.R. Co., 43 Conn. 494,500 (1876).
So ordered.
WILLIAM PATRICK MURRAY A Judge of the Superior Court