OLIVER T. RULE ET ALS. vs. CITY OF STAMFORD ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued May 15th—decided June 3d, 1936.

*Frank Rich,* for the appellants (plaintiffs).

*Maurice J. Buckley,* for the appellees (defendants).

MALTBIE, C. J. This is an appeal from a judgment of the Superior Court refusing to grant an injunction sought by certain residents and taxpayers of the city of Stamford to restrain the officers of the city from proceeding with the sale of certain municipal bonds.

The plaintiffs make several claims upon which they base their contention that the issuance of bonds was not properly authorized, but it is necessary to consider only one of them and hence to state only those facts relevant to the issue so raised. In discussing the matter we shall refer to sections of the city charter as revised in 1933. 21 Special Laws, p. 1189 ff. Section 129 of the charter provides, as far as relevant to the issues in this case, that at the request of the mayor the common council is authorized to issue bonds upon the faith and credit of the city, the proceeds to be applied "solely for the purpose of paying for public improvements or other municipal works of a permanent character and for paying for and improving land taken for the purposes of such improvements or municipal works;" that no bonds shall be issued until the appropriating board of the city shall by a vote of at least eight members approve the issue and the particular purpose for which it is made; and that any excess of the proceeds above the amount required for that purpose may be used, at the direction of the common council and with approval of at least eight members of the appropriating board, for any other permanent improvements or municipal works, but unless such a direction is given within ninety days from the completion of the work for which the bonds were issued, such excess shall be applied against the bond issue.

At a special meeting called by the mayor and held October 11th, 1935, the common council, at his request, adopted a resolution providing that bonds should be issued upon the faith and credit of the city to the amount of $375,000 for the purpose of paying for the purchase of land and the construction and equipment of a new administration building for the city. The mayor then called a special meeting of the

appropriating board of the city, which was held on October 16th, 1935, and at that meeting a resolution identical in form with that adopted by the common council was passed. No action in the matter has been taken by the common council of the city except the adoption of the resolution authorizing the issuance of the bonds. The plaintiffs contend that the issuance of the bonds was unauthorized because no ordinance for the construction of such a building as that referred to in the resolution has ever been adopted by the common council.

The charter vests the legislative power of the city in the common council and it authorizes that body "by ordinance, resolution or rule, as may be necessary or expedient, to carry out, regulate, amplify and define the specific corporate powers" granted to the city, except as limited or otherwise provided in the charter. Section 103. It is further provided that "all the legislative acts of the common council shall be by ordinance," the ayes and nays of the members being entered upon the journal; Section 107; that the approval of the mayor is necessary to give validity to an ordinance, although an ordinance will take effect if the mayor fails to return it to the commissioner of finance, or returns it without his approval or disapproval, within ten days after it is presented to him, in the same manner as though he had approved and signed it; that no ordinance shall be enforced until it has been published; and that every vote, resolution or order passed by the common council, with some exceptions not pertinent to our inquiry, shall be subject to the approval or disapproval of the mayor and shall follow the procedure set forth in the section containing these provisions, but that they need not be bound or published. Section 108.

The term "legislative acts" as used in Section 107

is in itself exceedingly broad but the provisions of the charter make it clear that it is used in a somewhat restricted sense. Thus it is provided that in exercising its powers with respect to public improvements for which an assessment of benefits and damages may be made the common council is to proceed by resolution, with a specific requirement for the approval of the mayor, and it is stated that the powers of the common council in these matters "are legislative only" and are not to affect or restrict the powers of the mayor or the department of service in executing such public improvements. Sections 113 and 114. Appropriations made by the city are to be recommended to the appropriating board by resolution approved by the mayor; Section 125; and no appropriation can finally be made except by resolution approved by the mayor. Section 111. The close analogy between these provisions, which are directed to be made by resolution, and the authorization of the construction of a city administration building is apparent; the use of the word "legislative" in Section 113 as descriptive of the power of the common council with reference to a matter which the charter specifically directs shall be determined by resolution is significant; and the purpose of the requirement that ordinances be published while resolutions need not be, confirms the conclusion that the provision requiring "legislative acts" to take the form of ordinances does not include the authorization of the construction of a city administration building. See *Katz* v. *Higson*, 113 Conn. 776, 155 Atl. 507.

The issue, however, goes much deeper than the mere question whether such authorization should be by ordinance or resolution. Whether it be by one or the other, the charter requires that the act of the council shall be submitted to the mayor after its passage for his approval or disapproval, and this requirement is

as essential to give validity to one as to the other. *New York & N. E. R. Co.* v. *Waterbury*, 55 Conn. 19, 23, 10 Atl. 162; *Long* v. *Lemoyne Borough*, 222 Pa. St. 311, 71 Atl. 211; 2 Dillon, Municipal Corporations (5th Ed.) § 578; 43 C. J. p. 532. Section 129 authorizes the issuance of bonds by the common council upon the request of the mayor. The determination by the city to build an administration building would not be within its scope. An act of the council providing that this should be done must be by ordinance or resolution adopted in accordance with the provisions of Section 108. No such action has been taken and the question resolves itself into this: May the council lawfully authorize the issuance of bonds to provide funds for a public building which the city has never legally determined that it will build?

The unfortunate results of its doing so are apparent. At the time a bond issue is authorized for a certain purpose, the mayor may desire it and the common council give its sanction and, as occurred in the instant case, the bonds may be issued and sold; but there may be subsequent changes in the personnel of those holding office in the city or a change of mind on the part of the mayor or some or all of the members of the common council such that the legislative authorities of the city may decide against proceeding with the work. Thus a situation would result where a large outstanding bonded indebtedness of the city might be created, to run for many years, without the possibility of using the proceeds for the purpose for which the bonds were issued; or, indeed, for any other purpose, for the provision in Section 129 that any excess above the amount required for the purposes for which the bonds were issued can be used for any other permanent improvements or municipal works would not apply to such a situation. Thus the city would

be placed in a position where it might be holding a large sum of money of which it could make no use, while it would be bound to pay interest upon the bonds. Moreover, the effect might be to make a serious inroad upon the power of the city subsequently to issue bonds for other purposes because of the limitation as to the amount of bonds of the city which may be at any time outstanding and unpaid. Section 130. The charter of a city does not in terms make the authority of the council to issue bonds for a particular purpose dependent upon a precedent ordinance or resolution that the work shall be done. The authority of a municipality to issue bonds is, however, to be strictly construed. *People ex rel. Carr* v. *Chicago Heights Terminal Transfer Ry. Co.*, 319 Ill. 389, 390, 115 N. E. 262; *Kaw Valley Drainage District* v. *Kansas City*, 119 Kan. 368, 370, 239 Pac. 760; *State ex rel. School District No. 6* v. *Moore*, 45 Neb. 12, 21, 64 N. W. 130; 6 McQuillin, Municipal Corporations (2d Ed.) p. 138. In the absence of plain authority for the issuance of bonds without precedent action determining that the public work or improvement to which the proceeds are to be devoted shall be carried out, the legislative intent inherent in the provisions of Section 129 for the issuance of bonds "for public improvements or other municipal works" can be held only to mean, for such improvements or municipal works as have been already determined upon by proper action by the legislative branch of the city government.

The charter of the city is unusual in that, while it vests in the common council the power to determine whether a particular public work shall be constructed, it limits the power of the council to authorize the issuance of bonds by requiring the approval of a different body, the appropriating board. Hence it might result that the council would determine that a public work

for the construction of which the issuance of bonds is necessary should be carried out, but thereafter a bond issue might prove impossible because the appropriating board would not approve. It is, however, within the power of the council in voting a public work to condition the effectiveness of that vote upon the proper authorization of the bond issue necessary to accomplish it.

At the time this action was brought it appears by the admitted allegations of the complaint that the bonds had not been sold. The finding states that they had been sold at the time the case was heard. The complaint is not wholly applicable to this situation. The case must therefore be returned to be proceeded with in the trial court.

There is error, the judgment is set aside and the case remanded to be proceeded with according to law.

In this opinion the other judges concurred.