WILLIAMS *et al. v.* MONTGOMERY *et al.*

(Division A. Feb. 6, 1939.)

[186 So. 302. No. 33482.]

Knox Lamb, J. W. Bradford, F. M. Witty, and O. L. Kimbrough, all of Greenwood, for appellants.

**Alfred Stoner** and **H. Talbot Odom,** both of Greenwood, for appellees.

Argued orally by **Knox Lamb**, for appellant, and by **H. Talbot Odom** and **Alfred Stoner**, for appellee.

**McGowen, J.**, delivered the opinion of the Court.

The Williams Funeral Home, conducted by Mrs. Alice Williams and M. T. Williams, and the Southern Undertaking Association appealed to this Court from a decree of the chancery court perpetually enjoining them from operating a funeral home and undertaker's establishment and a morgue on certain property owned by the appellants, known as the Tarver residence, on the River Road in the City of Greenwood, Mississippi. The bill was filed by Susan Malone Scales, Betty Malone, H. F. McShane, Mrs. Lillie H. Montgomery, T. S. Marye, W. P. Weaver, and Joseph W. George seeking a perpetual injunction.

The bill very fully described the operation of the funeral home and undertaking establishment, and the answer denied every material allegation in the bill, save that it was admitted that the funeral home was being operated. On the hearing of the case many witnesses were examined and we cannot undertake a detailed analysis thereof.

The chancellor found, and we think it was practically undisputed, that River Road was an exclusively residential district in the City of Greenwood, fronting on Yazoo River, with a paved street between, described in the record as a beautiful residential district. No zoning ordinances are here involved.

On July 26, Mrs. Williams filed a deed conveying to her the Tarver property, which was a two-story house that had been always theretofore occupied as a residence. Mrs. Scales and Miss Betty Malone lived immediately west of the funeral home about forty-five feet therefrom. Mrs. Montgomery and her husband lived to the east, with Dewey Street between, about ninety-five feet from the funeral home. The other complainants lived on that street at various distances, but further from the funeral home than those immediately adjoining. Directly upon

the filing of the deed, it became known to these complainants and others that it was proposed by the Williams to establish a funeral home in the Tarver residence, and immediately protests were made by mass meetings and by direct notice to the owners of the funeral home. However, the appellants proceeded to reconvert the residence into a funeral home and ignored these protests. Promptly this bill was filed, the contents of which will appear from an abbreviated finding of facts by the court which we approve. There was evidence that some of the parties living on this street selected their homes there because of its quietude. The record reflects that the street was adorned with residences, lawns, and the appurtenances of comfortable southern city homes, and also indeed a very choice residential section of Greenwood and the Delta. Greenwood has a population of over 11,000.

After a critical examination of the voluminous record in this case, we think the chancellor was warranted in finding the following facts in addition to the above statement: That upon the beginning of occupancy by the appellants the adjoining neighbors were annoyed to an appreciable extent by noises, unusual odors, slamming of doors, the ringing of the telephone and the door bell, the parking of cars and ambulances with lights shining upon their premises, the display of caskets and other burial paraphernalia, such as the hearse and the dead wagon, and the appliance used to lower the caskets containing dead bodies into the grave, also the bringing of the dead to the embalming room where the bodies were embalmed. The home was provided with a chapel, where they were equipped to have funeral services. The adjoining neighbors would see and hear constantly, according to the business done by the appellants, all the attributes and concomitances of a funeral party, the singing of funeral dirges.

Into this home were carried dead bodies sometimes for embalming, a process by which all the blood is forced from the body and a preservative fluid injected therein,

and as to the length of time a body would remain in the funeral home would depend upon the circumstances of each case. The property of those in the immediate vicinity would be greatly depreciated because of the operation of the funeral home, and that of others on that street would be depreciated to a less degree according to the distance from the funeral home. The chancellor found that the funeral home was a constant reminder of death, and the things connected with it were calculated to depress the feelings of the average normal person, and that such is detrimental to the health. The conclusion of the court below was that the appellees were denied the free use, occupation, repose, and comfort of their homes, and that the value thereof would be materially decreased thereby, although there were witnesses who testified that a funeral home had no unfavorable or depressing effect upon them.

The appellants had expended a considerable sum of money in the purchase and conversion of this residence into a funeral home in excess of $25,000, but they were warned before much of the expense was incurred that stubborn resistance would be met by them in the courts if they converted the residence into a funeral home.

We think the chancellor was warranted in finding in the maze of conflicting evidence in this case that the appellees were being denied the free use, occupation, repose, comfort, and enjoyment of their homes by reason of the establishment and operation of the funeral home, and that their property values had been consequently materially decreased thereby. He was further warranted in finding that the operation of a funeral home in all its details dealing with death and dead bodies would have a depressing effect on the average normal person.

This funeral home was conducted in a modern manner and was sanitary.

It is our own conclusion, based upon the conflicting evidence in this case, that a constant reminder of death, naturally caused to those in the vicinity of a funeral

home by its operation, is bound to have a depressing effect upon the persons who have sought a quiet street and and established it for a long time, and tends to impair right in this country to enjoy life, liberty, and pursuit of happiness.

It is true that a funeral home is now deemed a necessity, but its business is—dealing with the dead in the most gruesome manner. It is true as one poet has said that, "Our hearts like muffled drums are beating funeral marches to the grave," but it is not conducive to the quiet, peaceable enjoyment of one's property, who has selected an exclusively residential district for his home, to have a funeral home protrude itself into that district and conduct its business of dealing with the dead. The constant reminder of death to the average normal human being is not conducive to health and happiness when continually thrusting its "skull and crossbones" in his presence. The Savior of all mankind when He came face to face with it prayed to His Father, "Let this cup pass from me."

One poet has thus described it:

"Come to the bridal chamber, Death!
Come to the mother, when she feels
For the first time her firstborn's breath;
Come when the blessed seals
That close the pestilence are broke,
And crowded cities wail its stroke;
Come in consumption's ghastly form,
The earthquake shock, the ocean storm;
Come when the heart beats high and warm
With banquet song, and dance, and wine;—
And thou art terrible—the tear,
The groan, the knell, the pall, the bier,
And all we know, or dream, or fear
Of agony, are thine."

The authorities in our state are but little, if any, help on the question presented as to whether a funeral home, which is obtrusion upon a quiet and exclusively resi-

dential district, long established, shall be abated as a nuisance or perpetually enjoined.

The trend of the great weight of authority in this country in other jurisdictions have held under such conditions as we have delineated that such a funeral home conducting its business in the usual way, which protrudes itself (through its owners) upon such a district as we have described, may be perpetually enjoined and abated as a nuisance. The older authorities place the emphasis upon the right of the property owner to use his business for a lawful purpose emphasizing the property right. The modern trend of authority puts the stress upon the old maxim, "use your own so as not to injure another's property," and have held in effect that a funeral home such as we have before us invades the physical rights of those living in the immediate vicinity, and close thereto. It must be conceded that the operation of a funeral home is a lawful business, but the question presented—is it lawful under the circumstances here when we balance the rights of human beings and homes and environments as against mere property rights? See National Refining Company v. Batte, 135 Miss. 819, 100 So. 388, 35 A. L. R. 91.

In the case of Albright et al. v. Crim et al., 97 Ind. App. 388, 185 N. E. 304, the Appellate Court of Indiana held that a funeral home conducting an undertaking business is not a nuisance per se, but its operation in a purely residential district of the city, established as such when the funeral home was later operated therein, is a private nuisance and should be enjoined. The bill in this case appears to have been drawn on the facts of that case. The case of Bevington v. Otte et al., 223 Iowa, 509, 273 N. W. 98, is practically on all fours with what must be conceded to be the facts of this case. In the case of Jordan v. Nesmith, 132 Okl. 226, 269 P. 1096, the Court there said on this question, quoting from Joyce on Nuisances: "No principle is better settled than that where a trade or business is carried on in such a manner as to

interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie. And this, too, without regard to the locality where such business is carried on; and this, too, although the business may be a lawful business, and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business.'' We are not prepared to go all the way with this quotation because the necessity therefor does not now arise, but we quote this to show the length to which, in the opinion of law writers, the Courts have gone in the matter of funeral homes. Counsel on either side have vigorously attacked each of the authorities cited by the other, and it would be useless for us to undertake an analysis of the many decisions. We content ourselves with the statement that we think the following cases sustain the granting of the perpetual injunction of the case at bar. See Higgins v. Bloch, 213 Ala. 209, 104 So. 429; Laughlin, Wood & Co. v. Cooney et al., 220 Ala. 556, 126 So. 864; Fentress v. Sicard, 181 Ark. 173, 25 S. W. (2d) 18; Harris et al. v. Sutton et al., 168 Ga. 565, 148 S. E. 403; Albright v. Crim, supra; Bevington v. Otte et al., supra; Leland v. Turner, 117 Kan. 294, 230 P. 1061; Osborn v. Shreveport, 143 La. 932, 79 So. 542, 3 A. L. R. 955; Jack Lewis, Inc. v. Mayor, etc., of Baltimore, 164 Md. 146, 164 A. 220. A zoning ordinance was involved there. Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A, 825; Street et al. v. Marshall et al., 316 Mo. 698, 291 S. W. 494; Beisel et al. v. Crosby, 104 Neb. 643, 178 N. W. 272; Arthur et al. v. Virkler et ux., 144 Misc. 483, 258 N. Y. S. 886. The decision in this case is that of a single judge, but its reasoning is logical and persuasive. Jordan v. Nesmith et al., supra; King et al. v. Guerra (Tex. Civ. App.), 1 S. W. (2d) 373; Bragg v. Ives, 149 Va. 482, 140 S. E. 656; Densmore v. Evergreen

Camp, 61 Wash. 230, 112 P. 255, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B, 1206.

The minority view, we think, is clearly stated in the case of L. D. Pearson & Son v. Bonnie, 209 Ky. 307, 272 S. W. 375, but we cannot bring ourselves to agree therewith.

In conclusion we will say that no necessity is shown for the obtrusion of a funeral home in a strictly and exclusively residential district, long established, and so clearly and distinctly identified as such. We conclude with the general statement that judges are human beings, who try to keep abreast with the judicial trend of the people for whom they apply the law. We must be supposed to be acquainted with the reaction of the average normal person and of their sentiments and feelings, and we are certain that the obtrusion of a funeral home, over the protests of the people who have established and for a long time lived in a beautiful environment, a residential district, is bound to have a depressing effect upon the financial value of the properties, that the scenes about a funeral home are bound to depress the feelings and comfort and quiet enjoyment of the property of those who witness and live under its shadow daily; and where all the paraphernalia and symbols of death are constantly exhibited, the reaction of a normal person must be that of one who feels a keen sense of depression. It is psychological that a person who lives in a depressed atmosphere will normally be depressed in spirit and sensibility. and will be weakened in a power to resist the vicissitudes of life, including disease. One who has selected a quiet home for happiness and joy and comfort will, by the obtrusion of a funeral home in his immediate vicinity, have his right to comfort, repose, and enjoyment in the home materially affected; and there must ensue a material depreciation of the value of the home. Under such circumstances, as delineated here, a funeral home although lawful, although conducted in a modern approved manner, is a nuisance to those so affected.

We are not here dealing with a funeral home for an appreciable length of time permanently established unchallenged, nor with one located on a street already being used for conducting commercial enterprises.

Affirmed.