THOMAS F. SULLIVAN *v.* WILLIAM H. MORTENSEN ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 12—decided July 12, 1945.

*John W. Joy,* with whom, on the brief, was *Francis P. Rohrmayer,* for the appellant (plaintiff).

*Samuel H. Aron,* with whom was *Frank Covello,* for the appellees (defendants).

DICKENSON, J. The question of law involved is whether the position of assistant chief of police of the city of Hartford, which the plaintiff claims to hold, was legally created. The undisputed facts are as follows:

The plaintiff became a member of the Hartford police force in 1915 and had risen to the position of lieutenant on October 14, 1942. Sometime prior to that date an unofficial survey had been made of the police department, and on August 22, 1942, a report, known as the "Wilson Report," was filed with the board of police commissioners of Hartford recommending, together with other changes in the department, the appointment of an assistant chief of police who should be second in authority to the chief and superior in rank to the two deputy chiefs, and who should perform the duties of the chief in his absence. The report further recommended that necessary changes in the ordinances should be made to carry out its suggestions. At a meeting of the board of police commissioners on September 24, 1942, it was voted that the report be accepted and that the city's corporation counsel be requested to draw up such ordinances or changes in existing ordinances as were necessary to carry the plan into effect. A list of suggested

changes was sent to the corporation counsel, including one that § 285 of the ordinances, relating to the personnel of the police force, be amended to include the position of assistant chief of police, and that § 307, which prescribed the duties of two deputy chiefs, be amended to eliminate any conflict in duties of the several offices. No action was taken on these suggestions by the corporation counsel.

The director of finance and budget wrote the board of police commissioners a letter in which he stated that, subject to the approval of the board of finance, the position of assistant chief of police was entered on the salary schedule. On October 14, 1942, the board of police commissioners voted that the plaintiff be "elected" to the position of assistant chief. It was assumed that his duties were to be those defined in the Wilson report. The plaintiff immediately assumed the position of assistant chief and from then to the date of this action was held out as and considered himself to be the incumbent of that position. On October 23, 1942, the board of finance voted to approve the recommendation of the director of finance that the position of assistant chief of police be added to the "Standard Salary Schedule" and fixed a minimum salary for the incumbent at a considerable increase over his salary as lieutenant. Both the police board and board of finance assumed that the position was properly created and the appointment of the plaintiff properly made. On March 14, 1944, the police board, under a new chairman, asked the corporation counsel for an opinion as to the previous action of the board in creating the position of assistant chief and in appointing the plaintiff to fill it. It received an opinion that the action was illegal. A resolution was then offered at a meeting of the board that it consider itself bound by the opinion. An amendment was offered

that the opinion be placed on file and the plaintiff left in his position as assistant chief. The vote on both the amendment and the resolution resulted in a tie. The president of the police board invited the mayor of the city, as an ex-officio member of the board with power to break a tie vote, to attend a subsequent meeting. The mayor intended to attend such a meeting and vote, if necessary, to break the tie. Before he could carry out his intention, this action was instituted and a temporary injunction issued restraining him from so doing.

Between the date of the plaintiff's appointment and the bringing of this action, two annual budgets were adopted by the court of common council. The board of police commissioners, as required, submitted to the board of finance a lump sum estimate for salaries, with a supplemental list including a salary for an assistant chief. The board of finance submitted to the court of common council a similar total salary list for the various city departments with a so-called personnel supplement, not required, but furnished for the council's information, which included the position and salary of an assistant chief of police. The budgets were adopted, stating salary items in lump sum totals for the various departments. The resolutions adopting them did not include the personnel supplement. The only action taken by the court of common council in relation to the Wilson report was in March, 1943, when it appointed a committee "to investigate the operation of the Wilson plan employed by the Police Department." The following month, majority and minority reports were received from this committee, but the only action taken was to refer these to the board of police commissioners.

On these facts, the trial court concluded that the office of assistant chief of police was never legally cre-

ated, that the plaintiff was never the lawful incumbent of such an office, and that the action of the police board in appointing him to it was invalid. It further concluded that the board was within its rights in proceeding to revoke its action and restore the plaintiff to his status as lieutenant, as action necessary to remedy a wrongful act. The plaintiff assigns error, claiming that the common council could and did adopt and ratify the action of a branch of the city government and "affirmed and re-affirmed the appointment" of the plaintiff "to the position of assistant chief of police as made by the Board of Finance."

Section 5 of the 1941 charter of the city of Hartford (23 Spec. Laws 1202) provides that the court of common council shall have the power by majority vote of its members, present and absent, but subject to the approval or disapproval of the mayor, to make, alter and repeal ordinances, and "(c) to provide a city police force, prescribe its duties and confer upon policemen the ordinary powers of constables of towns." Section 135(a) further provides for a board of police commissioners which shall have general management of the police department and shall make all needful rules and regulations for the government thereof subject to the orders of the court of common council. It is further provided that all ordinances and provisions in the former charter in force prior to the enactment of the 1941 act, not inconsistent with its terms, are continued in effect. § 237(d). The common council, in pursuance of this authority, established a board of police commissioners by ordinance, with power of general management of the police department and power to make all needful rules and regulations not contrary to law and subject to the orders of the common council. Revised Ordinances, 1931, §§ 279, 281. The board consists of six members with the mayor of the city a

member ex officio. He has the power, to cast a vote when there is a tie vote of the board, except that he may not vote on the appointment of any member of the police force. § 282. It is further provided by § 285 as amended (Municipal Code, 1941, Chap. 9[7]) that the police department is to consist of "one chief of police, two deputy chiefs of police, such captains, lieutenants, detective sergeants, sergeants, detectives, patrolmen, policewomen, supernumeraries, matrons, drivers, mechanics, electricians and clerks as the board of police commissioners may deem advisable for the protection of the city"; and (Chap. 9[30]) that a deputy chief shall discharge the duties of the chief in his absence and one deputy shall also, at all times, under the direction of the chief, have the management and control of the police force.

Provision is thus made by charter for the establishment of a police department by ordinance, and its personnel and duties are fixed by ordinance. Section 285 of the ordinance as amended requires the appointment of a chief and two deputy chiefs of police and leaves to the board of police commissioners the appointment of such other members of the force as captains and officers of lower rank.

In brief, the claim of the plaintiff is that, the board of finance having allotted a certain sum for the salary of an assistant chief of police and the board of police commissioners having made the appointment, when the council adopted the budget with a statement in the hands of the members that it included the salary of an assistant chief, the council ratified the plaintiff's appointment as made by the board of police commissioners. He claims that the court of common council was thoroughly acquainted with the establishment of the position of assistant chief, which was called to its

attention by its investigation of the Wilson plan, and that it adopted the appointment as its own.

By duly adopted ordinance, the personnel of the police department, above the office of captain, was definitely fixed and the powers of deputy chiefs determined. Until that ordinance is amended there is no office of assistant chief to which a person may be appointed. The plaintiff makes no claim of an amendment to the ordinance. His apparent claim is that he was appointed by the common council dehors the ordinance. Section 5 of the charter requires that the police force shall be established by ordinance, and the common council has so established it. Sections 8 and 9 provide the manner in which ordinances shall be enacted and revised. 23 Spec. Laws 1206. The power to create an office must be sought in the powers granted to the court of common council by the legislature. *Kelly* v. *Bridgeport,* 111 Conn. 667, 673, 151 Atl. 268; *Tremp* v. *Patten,* 132 Conn. 120, 125, 42 Atl. (2d) 834, and authorities therein cited. "If the law requires the deliberative form of an ordinance to accomplish a named act such act can be performed only in this manner." 2 McQuillin, Municipal Corporations (2d Ed.), § 664. "When the local legislature, in strict pursuance of the authority given by statute, enacts ordinances, those ordinances are operative as laws by force of the statute. . . ." *State* v. *Cederaski,* 80 Conn. 478, 480, 69 Atl. 19. Any intent of the common council as evidenced by its resolutions in relation to the budget cannot take the place of established ordinances. The trial court correctly ruled that no office of assistant chief of police was established of which the plaintiff was the incumbent. The action of the board of police commissioners in attempting to appoint the plaintiff an assistant chief of police was without authority, and there was no reason why, if it chose to do

so, it might not rescind its vote and reinstate the plaintiff in his former position as a lieutenant. The trial court correctly held that the defendants should not be enjoined from taking action properly incident to an attempt to do so.

There is no error.

In this opinion the other judges concurred.