E. MORRIS JACK ET AL. *v.* FRANCIS L. TORRANT ET AL.

THE ZONING COMMISSION OF THE TOWN OF LITCH-FIELD *v.* FRANCIS L. TORRANT ET AL.

BROWN, JENNINGS, DICKENSON, BALDWIN AND INGLIS, JS.

Argued January 3—decided February 21, 1950.

*Thomas F. Wall,* for the appellants (defendants).

*Hugh M. Alcorn, Jr.,* with whom was *H. Gibson Guion,* for the appellees (plaintiff Jack et al.).

*William M. Foord,* for the appellee (plaintiff zoning commission).

BROWN, J.   These two cases were tried together. In the first, the plaintiffs sought to enjoin the defendants from using their property as an embalming and undertaking establishment, alleging in the first count that this use was violative of applicable zoning regulations, and in the second that it constituted a nuisance. In the second action, the plaintiff zoning commission sought similar injunctive relief against the defendants' violation of the zoning regulations. The court granted a permanent injunction against the defendants in each case and they have appealed from both judgments.

The attack on the finding has been abandoned. The facts are those found by the trial court. On October 8, 1946, the defendants purchased a four-acre tract of land, with an eighteen-room dwelling house thereon, located on the westerly side of North Street in Litchfield and bounded northerly by the property of the plaintiff Jack and southerly by that of the plaintiff Fisher. The defendant Francis L. Torrant was a li-

censed undertaker and embalmer. The defendants purchased the property in part to rearrange it into living apartments, but mainly to provide a place where the defendant Francis could carry on his business as an embalmer and undertaker. Under the zoning regulations referred to in the next paragraph, all three properties were in a residence zone wherein the use of property for business purposes was not permissible.

Special Acts, 1939, No. 182 (23 Spec. Laws 127), which became effective May 2, 1939, authorized the town of Litchfield to adopt zoning and incorporated by reference the applicable provisions of chapter 29 of the General Statutes, Rev. 1930, as amended. On August 18, 1939, the town of Litchfield effectively voted to adopt the provisions of Special Act No. 182 and thereafter, in pursuance of this vote and act, a zoning commission of seven members came into being. The commission held numerous meetings looking to the ultimate adoption of zoning regulations. On May 17, 1945, it held a meeting and unanimously approved a set of regulations for the town. None had previously been approved by the commission. On June 7, 1945, it again met, made certain slight changes in the regulations approved at the previous meeting, and added to them a provision for their becoming effective as of July 10, 1945. The regulations were published in full in the local newspaper on June 14, 1945. On June 21, 1945, pursuant to due notice given, a public hearing with reference to the proposed regulations was held at which six of the seven members of the commission were present. Many persons appeared and were heard. No objections to the proposed regulations of sufficient force, substance or persuasiveness were advanced, however, to inspire the commission or its members to reconsider them. The commission did not, therefore, again meet to adopt or change the regulations as ap-

proved at the meeting of June 7, 1945, and no member of it requested any further meeting.

The court concluded that the zoning regulations so submitted to the voters of the town at the public hearing on June 21, 1945, were properly and lawfully enacted and became effective on July 10, 1945. Whether this conclusion is correct is the first question for determination. It calls for the application to the above facts of § 132e of the 1939 Cumulative Supplement to the General Statutes, which is the pertinent amendment to chapter 29, entitled "Zoning," of the 1930 Revision. This section provides in part: "No such regulation or boundary shall become effective or be established until after a public hearing in relation thereto . . . at which parties in interest and citizens shall have an opportunity to be heard." The question is: Does the statute require, in order to render the regulations valid and effective, that after the public hearing is had the commission shall vote to adopt them?

In construing a statute where the wording is plain, "we are not at liberty to speculate upon any supposed intention not expressed in an appropriate manner or to restrict the ordinary import of words used in order to effectuate such supposed intent but 'which the statute in its native form does not express.'" *McManus* v. *Jarvis,* 128 Conn. 707, 711, 22 A. 2d 857; *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414, 422, 52 A. 2d 636. The word "effective" is defined as "able to produce an effect," but as used here "emphasizes the actual production of an effect, whose continuance it often suggests; as, the law becomes effective at once." Webster's Collegiate Dictionary (3d Ed.). "Establish" means "to . . . enact, or ordain for permanence, as . . . laws, etc." Id. Applying these definitions, the provision that no zoning regulation "shall become ef-

fective or be established until after a public hearing" can only mean that the action by the zoning commission which actually gives to a regulation its validity and enacts it into law must be taken after the commission has held the prescribed public hearing. This requirement renders action subsequent to the hearing mandatory and of the essence of the procedure prescribed, so that a vote before the hearing cannot be effective. The employment of the negative or prohibitive language and form of the act, expressive of a condition precedent and appropriate to the creation of a limitation of power, confirms the interpretation we have stated. *Spencer's Appeal,* 78 Conn. 301, 303, 61 A. 1010; *Nielsen* v. *Board of Appeals on Zoning,* 129 Conn. 285, 287, 27 A. 2d 392. So also does the practical consideration, which must be held to have been within the legislative intent, of affording property owners the protection of the exercise of the composite deliberative consideration and judgment of the commission, formally registered, after its members had the benefit of considering all the claims made and information afforded at the public hearing. See *Strain* v. *Mims,* 123 Conn. 275, 280, 193 A. 754. Otherwise such a hearing could serve no purpose.

"The fundamental rule relating to municipal legislation is that an ordinance must be enacted in the manner provided by law. . . . The rule applicable to the corporate authorities of municipal bodies is that when the mode in which their power is to be exercised is prescribed . . . that mode must be followed." *Glens Falls* v. *Standard Oil Co.,* 127 Misc. 104, 111, 215 N. Y. S. 354. This principle, which is supported by many authorities, is also exemplified in a number of decisions of this court, among which are: *Keegan* v. *Thompson,* 103 Conn. 418, 425, 130 A. 707; *Sullivan* v. *Mortensen,* 132 Conn. 289, 295, 43 A. 2d 731; *Rule*

v. *Stamford*, 121 Conn. 447, 451, 185 A. 178. The plaintiffs contend, however, that upon the facts found the continuing acquiescence by the members of the commission, after the hearing, in the votes of approval cast prior thereto obviated the need of a subsequent vote of adoption to make the regulations valid.

This contention cannot prevail. "It is a well-settled rule that when municipal councils or boards of any kind are called upon to perform legislative acts or acts involving discretion and judgment in administering the public affairs, *they can only act at authorized meetings* duly held. The council or board must meet and act as a board or council. The members cannot make a valid determination binding upon the corporation by their assent separately and individually expressed." 2 Dillon, Municipal Corporations (5th Ed.) p. 825, § 501, and see p. 904, § 575; *Martin* v. *Lemon*, 26 Conn. 192, 193; *Herrington* v. *District Township*, 47 Iowa 11, 13; *Forcum* v. *District of Montezuma*, 99 Iowa 435, 439, 68 N. W. 802; *Aikman* v. *School District*, 27 Kan. 129, 130; *McNolty* v. *Board of School Directors*, 102 Wis. 261, 263, 78 N. W. 439; *Kleimenhagen* v. *Dixon*, 122 Wis. 526, 533, 100 N. W. 826; *Cleveland Cotton Mills* v. *Commissioners*, 108 N. C. 678, 688, 13 S. E. 271; note, L. R. A. 1915F, 1047; see *Attorney-General* v. *Remick*, 73 N. H. 25, 27, 58 A. 871. As the court said in *Paola & F. R. Ry. Co.* v. *Commissioners*, 16 Kan. 302, 309, "Wherever a matter calls for the exercise of deliberation and judgment, it is right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all the persons to whom has been intrusted the decision. . . . All the benefit, in short, which can flow from the mutual consultation, the experience and knowledge, the wisdom and judgment of each and all the members, is endangered by any other rule."

Since the zoning commission failed and neglected to pass a vote adopting the proposed zoning regulations after the public hearing of June 21, 1945, as required by law, they never became valid regulations for the town of Litchfield. The court's judgment for the plaintiff zoning commission in the second case is predicated upon the validity of the regulations and is therefore erroneous. The same is true of its judgment in the first case in so far as it relates to the cause of action alleged in the first count.

The remaining question is whether the court erred in rendering judgment in favor of the plaintiffs upon the second count in the first case, which declares that the conduct by the defendants of the embalming and undertaking business, as alleged, constituted a nuisance in fact. An undertaking establishment is not a nuisance per se. Whether it constitutes a nuisance depends upon the facts in the particular case. These consist of the manner in which it is operated and the situation in which it is placed. Since the finding is that this establishment was conducted in a proper manner, the decisive issue concerns its location under the existing circumstances. See 46 C. J. 726, § 202. A study of the cases has satisfied us that "The greater weight of recent authority is to the effect that the establishment and operation of an undertaking business in a purely residential section, under circumstances which would cause a depressed feeling to the families in the immediate neighborhood, and a constant reminder of death, appreciably impairing their happiness, or weakening their power to resist disease, and depreciating the value of their property, constitutes a nuisance." Note, 87 A. L. R. 1062; 54 Am. Jur. 513, § 7; 3 Cooley, Torts (4th Ed.) p. 180, § 435.

The following expressions by the courts serve to emphasize the underlying reason for the application of

this principle. In *Arthur* v. *Virkler,* 144 Misc. 483, 258 N. Y. S. 886, the court first (p. 486) referred to the "fundamental principles" which must be considered in these cases, to wit, the degree of discomfort which the conditions complained of would produce in the normal person and the necessity that the disturbance of the plaintiffs' enjoyment of their property rights be real and substantial as distinguished from fanciful. It mentioned the fact that the normal man is affected by the consciousness of death so that if this is occasioned near his home his quiet enjoyment there, to which he is entitled, is adversely affected. It then continued (p. 489): "The inherent nature of an undertaking establishment 'is such that, if located in a residential district, it will inevitably create an atmosphere detrimental to the use and enjoyment of residence property, produce material annoyance and inconvenience to the occupants of adjacent dwellings, and render them physically uncomfortable, and in the absence of a strong showing of public necessity, its location in such a district should not be permitted over the protests of those who would be materially injured thereby.'" In *Laughlin, Wood & Co.* v. *Cooney,* 220 Ala. 556, 558, 126 So. 864, the court used language to the same effect. In *Cunningham* v. *Miller,* 178 Wis. 22, 189 N. W. 531, the court stated (p. 29): "The injury complained of must be substantial and tangible and the discomfort created thereby susceptible to the senses of ordinary people. . . . Its actual effect must be judged by the degree of discomfort and injury produced upon the average person." In *Jordan* v. *Nesmith,* 132 Okla. 226, 269 P. 1096, the court said (p. 228): "The basis of injunctive relief by the courts in these cases seems, in the last analysis, to have been the fact that constant reminders of death, such as an undertaking establishment and the activities connected with it, impair in a

substantial way the comfort, repose and enjoyment of the homes in that immediate neighborhood."

It is our conclusion that the principle as enunciated is the rule which should be applied in the determination of this case. It is true that, in some of the cases wherein it has been adopted, other physical factors such as a possible pollution of the atmosphere were present, factors not involved in the instant case. See *Cunningham* v. *Miller,* supra, and *Saier* v. *Joy,* 198 Mich. 295, 164 N. W. 507. However, in a number of the cases the contrary was the fact and the business was conducted in accord with the most approved mortuary practice. See *Street* v. *Marshall,* 316 Mo. 698, 291 S. W. 494; *Jordan* v. *Nesmith,* supra; *Laughlin, Wood & Co.* v. *Cooney,* supra. What constitutes a nuisance in one locality may not in another. *Nailor* v. *Blakeslee & Sons, Inc.,* 117 Conn. 241, 245, 167 A. 548. It is because of this that the nature of the residential district wherein the undertaking establishment is located becomes of such great significance. In some of the cases where injunctive relief has been granted, the neighborhood was apparently purely residential. Thus, in *Jordan* v. *Nesmith,* supra, 227, the area is described as an exclusively residential district, long established and clearly and distinctly identified as such. See also *Williams* v. *Montgomery,* 184 Miss. 547, 552, 186 So. 302. In many cases, however, the existence in the general neighborhood of certain structures used for other than strictly residence purposes, varying in number and in their proximity to the properties of the litigants in the different cases, has been held insufficient to preclude injunctive relief. The following are cases of this nature. *Laughlin, Wood & Co.* v. *Cooney,* supra; *Dillon* v. *Moran,* 237 Mich. 130, 211 N. W. 67; *Kundinger* v. *Bagnasco,* 298 Mich. 15, 298 N. W. 386; *Davis* v. *Holmes,* 189 Miss. 554, 198 So. 25; *Weinmann*

v. *Miles,* 134 Kan. 107, 4 P. 2d 447; *Smith* v. *Fairchild,* 193 Miss. 536, 10 So. 2d 172; *Clutter* v. *Blankenship,* 346 Mo. 961, 964, 144 S. W. 2d 119; *Tureman* v. *Ketterlin,* 304 Mo. 221, 263 S. W. 202. What constitutes a residential district which affords a basis for injunctive relief under the rule naturally defies precise definition, as these cases well illustrate. Not only is the extent to which nonresidential uses exist a factor but there is the further question as to how extensive the area embraced in a residential section shall be. As the court well pointed out in *Smith* v. *Fairchild,* supra, 547, this "question is comparative and relative. The extent of the territory is only one factor. The number, kind, value and locations of the structures therein, the uses to which the territory is adapted, and all the surrounding facts and circumstances are to be considered. No hard and fast rule can be laid down. Each case must depend upon its own facts." Thus, as the court pointed out in *Weinmann* v. *Miles,* supra, 110, whether the locality is of such a strictly residential character as to warrant the injunction is largely a question of fact. This is the basis of our application of the above principles to the facts.

The trial court has made an extensive and detailed finding of the subordinate facts upon which it rests its conclusion that the conduct of the undertaking business upon the defendants' property constituted a nuisance in fact. As already stated, the defendants' property is located on the west side of North Street and is bounded on the south by the Fisher property and on the north by the Jack property. A seven-foot sidewalk with a forty-four-foot green area between the walk and the street extends in front of all three properties. The defendants' house is 158 feet from the Fisher house and 88.3 feet from the Jack house. North Street is one-third of a mile long, is of ample

width, with a double row of large trees on each side, and is part of a through highway. It is within the borough of Litchfield, which, except for a small compact business area a short distance south of North Street, is almost exclusively residential in character. Within the borough are numerous very old houses of architectural beauty and historical interest, giving the community an atmosphere which makes it unique. North Street is one of its most charming residential streets, and along both sides of it are many large and valuable houses of great age and historical interest. The Jack home is a large dwelling surrounded by spacious and beautifully landscaped grounds, and the Fisher home is one of the historical and architectural treasures of the community.

The ancient Litchfield jail stands on the west side of North Street at its extreme southerly end facing the Litchfield green, and directly north of it is a building in which are two banks. Next north of this building is a residence, and next beyond that is a house used as a convalescent home, with a sign "Rose Haven" on the front. Between this and the Fisher property are two dwellings. Diagonally across the street from the defendants' property is the residence of Dr. Warner, in which he maintains his office. On the south side of the house on the eighth property north of the Warner house is a kennel in which a number of dogs are kept. In the residence next north of this the owner maintains his law office, and in the most northerly house on the west side of the street the doctor who owns it maintains his office. Except as stated above, North Street is, throughout its extent, devoted exclusively to residential uses and has been for a number of years. These facts warrant the court's further finding that until the intrusion of the defendants' business there

was no use on North Street inconsistent with the exclusively residential character of the neighborhood.

The defendant Francis L. Torrant purchased his property with the purpose of extending his existing undertaking and embalming business to Litchfield. The house was a large eighteen-room dwelling. He made alterations to provide for the conduct of the funeral business and also for three living apartments. In connection with the former, he transformed a small basement kitchen with windows facing the Jack property into a room for the embalming of human bodies at any time of the day or night and equipped it with embalming facilities and instruments for use in the business, including the performance of autopsies. A large front room facing toward the Fisher property was prepared for and frequently used for funeral services. Other rooms back of it were used for the display and sale of caskets and for the storage of caskets and other equipment in connection with the business. After the place was licensed as a funeral establishment on November 1, 1946, a twelve by eighteen inch sign, "Francis L. Torrant Mortician," was placed on the front of the house, and the establishment for undertaking and embalming was advertised in the newspaper. Prior to the court's temporary injunction of June 23, 1947, a number of bodies were embalmed and funerals held on the premises. A hearse was used in connection with the business and at times remained parked on or in front of the premises. In his role as undertaker and embalmer, the defendant Francis L. Torrant conducted the business in a proper manner, and there was no testimony that any smoke, odor or spread of disease was caused thereby on the property of the plaintiffs. The business was, however, especially harmful to the other properties on North Street, because a funeral business with its morgue, funeral processions and at-

tendant activities is a particularly undesirable business, and the invasion of the neighborhood by it would adversely affect and ultimately destroy the privacy, seclusion and quiet so characteristic of this residential community and therefore would substantially reduce the market value of its residential property. The undertaking occupation as conducted by the defendant Francis was and is a business and not a profession. The defendant Mary H. Torrant had full knowledge of and acquiesced in all that her husband did in carrying on the business.

As a result of the operation of this funeral business, the surrounding properties and their occupants suffered a direct and immediate adverse effect. The consciousness of the plaintiff Jack and his household of the use made of the basement room as a morgue and the transportation of human bodies over the defendants' adjacent driveway by night and by day had an immediate and continuing depressing effect upon them which substantially decreased their quiet and peaceful enjoyment of their home. The presence of the funeral business in such close proximity to the home of this plaintiff substantially decreased the market value of his property. The conduct of the funeral business as referred to, including the parking of long lines of cars of mourners in front of the plaintiffs' homes, had a like effect upon the plaintiff Fisher and her household and upon the value of her property, for similar reasons. On one occasion, by mistake, an attempt was made to deliver a load of coffins to the Fisher home. On another, a prospective patron of the funeral home called at the Fisher home through error. At different times, a member of the Fisher household observed embalmed human bodies laid out in caskets in the defendants' first-floor room. These incidents served to accentuate the effect upon the Fishers already recited.

This effect was experienced not only by them as persons of normal sensitivity but likewise by others in the neighborhood, and the property values of the latter were similarly depreciated. The trial court viewed the entire North Street area and found that it appeared therefrom that the defendants' funeral business is wholly unsuited to the residential character of the remainder of the neighborhood in which it is located. It was warranted in concluding, upon this view and the facts found, that the use of the defendants' property for an undertaking and embalming establishment constituted a nuisance in fact, and that under the principles discussed above the plaintiffs are entitled to injunctive relief.

The fact that the defendants expended a substantial amount in adapting the premises for use as such an establishment cannot avail to defeat the plaintiffs' right to an injunction, since the finding is conclusive that they were seasonably and amply warned that they had no right to use the premises for this purpose and that the plaintiffs would resist their effort to do so by every lawful means; notwithstanding, they ignored all warnings and persisted in their course. *Arthur* v. *Virkler,* 144 Misc. 483, 489, 258 N. Y. S. 886; *Williams* v. *Montgomery,* 184 Miss. 547, 554, 186 So. 302; *Armstrong* v. *Leverone,* 105 Conn. 464, 475, 136 A. 71. Only one other contention of the defendants requires mention. The witness Fisher was permitted, over their objection, to testify to his reaction and feelings, as "a normal person," to the establishment of the funeral home on the defendants' adjoining property. As sufficiently appears from the authorities we have discussed, such a reaction was a fact directly in issue, and the court properly allowed the question.

In sustaining the court's judgment granting this injunction, we would emphasize that our decision is

predicated upon the correctness of the court's conclusion upon the particular facts found. Had the defendants established and maintained this funeral home for a substantial period without objection, a very different question might be involved in determining whether the plaintiffs could obtain injunctive relief.

There is no reversible error in the first case and judgment for the plaintiffs is affirmed. There is error in the second case, the judgment is set aside and the case is remanded with direction to enter judgment for the defendants.

In this opinion the other judges concurred.