ANTHONY J. ZIOMEK ET AL. *v.* JOHN L. BARTIMOLE
ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued June 6—decided July 2, 1968

*Thomas J. Barrett,* for the appellants (named defendant et al.).

*David B. Cohen,* for the appellees (plaintiffs).

COTTER, J.   The plaintiffs, officers in the Derby police department, took an appeal to the Court of Common Pleas, pursuant to § 52-7 of the General Statutes, from the action of the board of police commissioners of the city of Derby in making certain promotions in the police department of the city. *Riley* v. *Board of Police Commissioners,* 145 Conn. 1, 6, 137 A.2d 759.   The defendants have appealed

to this court from a judgment of the Court of Common Pleas, which sustained the appeal from the board, vacated the actions of the board and ordered that new examinations be held for the ranks of lieutenant and, as and if needed, for sergeant, grade A police officers, and detective sergeant.

The facts pertinent to a decision of this appeal may be summarized as follows: In August, 1966, the chief of the Derby police department died, and, in accordance with the provisions of the charter of the city of Derby, Edward Slezak, then a lieutenant, was designated and sworn in as the successor chief of police, and as a result a vacancy in the position of lieutenant was created. On October 10, 1966, a notice was posted by the board of police commissioners in the Derby police station that an examination would be held on October 19, 1966, for the position of lieutenant. Thereafter, on October 17, 1966, John L. Bartimole, the then mayor, acting on his own and without seeking or obtaining a previous vote from, and without having had prior consultations with, the board of police commissioners, canceled the giving of the examination. Thereafter, separate notices were posted on December 23, 1966, that there would be examinations for the position of lieutenant to be held December 27, 1966, for the position of sergeant to be held December 28, 1966, and for the position of grade A police officer to be held on December 29, 1966. A fourth notice was posted December 28, 1966, that there would be an examination for the position of detective sergeant on December 30, 1966. The notices were signed by John L. Bartimole, mayor, member ex officio, "for board of police commissioners." The board of police commissioners did not hold a meeting relative to the scheduling of those examinations. There had been

no prior vote taken by the board authorizing the mayor to issue the notices, and the notices did not contain any information as to the nature of the examinations, i.e., whether the examinations were to be oral or written or both. Nor did they contain any statement as to the content or standards to be applied or taken into account, i.e., other elements such as experience, record, etc., which might be considered in the scoring of the examinations. Prior examinations in the police department in the city of Derby had been turned over to the state personnel department, which department had prepared the examination and conducted, graded and scored it. The police commissioners were not allowed to be present in the room when these examinations were conducted. The mayor had communicated with the state personnel department to conduct the instant examinations, as in the past. The commissioners were disturbed that they, in the past, had not been allowed to conduct the examinations. Requests for the preparation of prior examinations for promotion had been submitted to the state personnel department.

Some days before the examination was to be held, when the mayor was questioned by Joseph Stankye, one of the police commissioners, as to the name of the proposed preparer of the examinations, the source thereof, and whether or not they would be civil service examinations, the mayor refused to answer or to divulge any of the information to him. The mayor prepared the examinations by copying questions from a book on police promotional procedures entitled "Arco, Civil Service Series," which he obtained at the Bridgeport Public Library, and he also copied the key to the questions contained therein. On December 27, 1966, the mayor presented

a package to the board of police commissioners
which he then informed them was the examination
which he had obtained to be given for the position
of lieutenant. This was the first time the board of
police commissioners had seen the examination.
The board did not know nor was it informed of the
name of the person who had prepared the examina-
tion, and it did not know the source from which
the examination had been obtained. No member of
the board of police commissioners was informed of
any prior security provisions or where the examina-
tion had been kept or whether anyone other than
the mayor had seen it prior to the evening of the
examination. The examination had, in fact, been
prepared solely by the mayor, himself, who had no
previous background, knowledge or experience in
the preparation of any kind of promotional examina-
tions, and the examination was not a "civil service
. . . [examination] based on the Connecticut state
police entrance examinations" although previous
promotional examinations were. Derby Charter
§ 49-A (1960); 26 Spec. Laws 1077, No. 549 § 1. No
one from the state police was present during the
examinations, and they were not conducted "under
the supervision of the state police" although the
state police did supervise previous promotional
examinations in the city of Derby. Ibid. On each
night that the examinations were held, the mayor
produced a sealed envelope containing the examina-
tions which he turned over to William Rossi and
Joseph Stankye, two police commissioners, in the
presence of those who were taking the examination.
Each candidate was required and directed to sign
his name on his examination paper although no sig-
nature was required in previous promotional civil
service examinations. Although the notice for the

examination did not state or specify that an oral examination would be given, each candidate was required to take a so-called oral examination.

In each case, the mayor and the other two commissioners graded and scored the examinations, and the mayor participated in the oral interviews. The mayor likewise participated in the correction of all of the written examinations and in the questioning and scoring of each candidate in all of the oral examinations, and his total scores were included in each instance although he had not participated in prior promotional examinations. All of the so-called successful candidates were selected and notified by the mayor without a previous vote having been taken by the board of police commissioners.

The mayor went out of office and was succeeded as mayor by the defendant Harry Cicia on January 2, 1967. The terms of the two members of the board of police commissioners expired in January, 1967, and they were succeeded by the defendants Arthur Bacchiocchi and Maximillian G. Biga.

Membership or promotion in the police department is governed by the charter of the city of Derby, which provides in part as follows: "Applicants for membership or promotion in the police department shall submit to civil service examinations based on the Connecticut state police entrance examinations. Such examination shall be conducted by the board of police commissioners under the supervision of the state police." Derby Charter § 49-A (1960); 26 Spec. Laws 1077, No. 549 § 1, as amended by 28 Spec. Laws 483, No. 383. The board of police commissioners cannot abrogate the force of positive statutory provisions where the statute does not specifically grant it that power, and it was required to comply with those provisions without modification,

abridgment or change. *State ex rel. Huntington* v. *McNulty,* 151 Conn. 447, 449, 199 A.2d 5; *Sullivan* v. *Mortensen,* 132 Conn. 289, 295, 43 A.2d 731. This is especially so as applied to the statute under consideration, wherein it is contemplated and provided that applicants submit to civil service examinations. Strict statutory compliance in such a case is required in order to support the validity of the action of a municipal board concerned with promotions under civil service. *Resnick* v. *Civil Service Commission,* 156 Conn. 28, 32, 238 A.2d 391; *Kenney* v. *McDonough,* 315 Mass. 689, 693, 53 N.E.2d 1006.

The object of providing for civil service examinations is to secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination. *Civil Service Board* v. *Warren,* 74 Ariz. 88, 90, 91, 92, 244 P.2d 1157. "Therefore any violation of an ordinance enacted for the purpose of preserving that efficiency is fatal because it weakens the system of competitive selection which is the basis of civil service legislation." Id., 91. The findings of the court, supported by the evidence, that "[t]here was no uniformity in the so-called oral examinations as each member of the Board of Police Commissioners and the Mayor asked different questions of each candidate and same were thus non-competitive"; that "[n]o uniform list of questions for the so-called oral examination was prepared or agreed upon by the Board of Police Commissioners in advance of said examinations"; and that "[n]o arrangements had been established by the Board of Police Commis-

sioners prior to the oral examinations as to the method to be used in scoring the examination or as to the weight to be given therefor" demonstrate the manifest infirmity in the proceedings conducted by the board not only as to the content of the examinations but also the mode of procedure. There was testimony that the commissioners were informed by the mayor that they could ask the applicants any questions they wanted, any questions that came into their minds, and no uniform list of questions was selected, discussed or prepared. "A test or examination, to be competitive, must employ an objective standard or measure. Where the standard or measure is wholly subjective to the examiners it differs in effect in no respect from an uncontrolled opinion of the examiners and cannot be termed competitive. . . . An examination cannot be classed as competitive unless it conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience." *Matter of Fink* v. *Finegan,* 270 N.Y. 356, 361, 362, 1 N.E.2d 462; *Matter of Cowen* v. *Reavy,* 283 N.Y. 232, 237, 28 N.E.2d 390; 15 Am. Jur. 2d 484, Civil Service, § 22. Where the board acts capriciously upon the individual notions of the members of the board in conducting the oral examination, its action will be invalidated. *Matter of Cohen* v. *Fields,* 298 N.Y. 235, 242, 82 N.E.2d 23. The examinations as prepared and conducted did not meet the requirements of the charter.

It was improper for the mayor to preempt the functions and authority of the board of police commissioners. His authority was clearly defined and limited in the charter of the city of Derby, which provides in part as follows: "The mayor shall be

ex officio, a member of the board of police commissioners . . . . In case of disagreement between the members of the board of police commissioners in any matter pertaining to the department of police service, or pertaining to the duties and powers of the police commissioners, . . . the mayor shall vote to dissolve such tie, and thereupon such action shall be deemed to be the action of a majority of the board of police commissioners . . . ." Derby Charter, p. 12 (1960) ; 21 Spec. Laws 357, No. 390. The board did not meet as such at any time in connection with the examinations prepared and conducted for the promotions under consideration. Consequently, there was no vote and no tie which the mayor was called upon to dissolve under the provisions of the charter.[1] Members of a municipal board cannot exercise their powers and duties separately. They must meet and act as a board at authorized meetings duly held. *Jack* v. *Torrant,* 136 Conn. 414, 420, 71 A.2d 705; 2 Am. Jur. 2d, Administrative Law, § 227. An informal discussion is not a formally convened session such as required by law. *State Tax Commission* v. *El Paso Natural Gas Co.,* 73 Ariz. 43, 46, 236 P.2d 1026.

There is no error.

In this opinion the other judges concurred.

---

[1] "A tie is that which is tied. It is a knot; and when provision is made, in regulating legislative procedure, for a casting vote by the presiding officer in case of a tie, the object is to allow him to untie this knot." *Wooster* v. *Mullins,* 64 Conn. 340, 343, 30 A. 144.